Please call the next case. Our next case is 514-0481-WC. Rehkemper & Son Building Comp'n v. Kevin Cook. James Gallin for the appellant. John Scarra for the appellee. Your Honors, please accord. As announced, I'm Jim Gallin, representing Rayberger Construction Comp'n, the appellant employer. We have a number of issues we think that the Commission erred on the issue of manifest weight of the evidence. We've covered them in our brief, and I will expound on that a bit. The Commission awarded vocational rehabilitation, which we feel is contrary to the manifest weight of the evidence and must be reversed. The petitioner is a high school graduate to his knowledge about the roofing trade. He was released for full duty, which was modified only after Dr. Bassman got an erroneous history of the petitioner's activities. There is no expert evidence in the record that the claimant would benefit or needs vocational rehabilitation. His work job search was limited to about 25 places in two months. Can I ask you a question on that? Sure. I don't have to parse words. Is there anything in the law or statute that says 25 times or 25 job searches applications is insufficient as a matter of law? No, Your Honor. There is no set amount that it's a matter of judgment. Why is that inadequate? Well, first of all, it was 25 times in two months. That was October and November. The trial was in April, five months later. I believe his testimony, what do you do now? Well, occasionally I ride down to the gas station with my girlfriend to get out of the house. They haven't proven that he needs it or would benefit from it by an unsuccessful attempt without professional help. He tried for a while. Apparently just stopped after two months and then another five months, no activity. So we don't think they proved it that way. They certainly haven't proven it by any expert testimony that given his age, his physical abilities, his training and experience, that he would benefit from vocational rehabilitation. So another factor on this is the commission has also ordered additional medical treatment. So even if they had proven that at some point he was going to need it, it would be premature because there's no telling what his condition is going to be given when he gets this additional medical treatment. Did the employer submit a rehabilitation plan under the rule? I believe they did not, Your Honor. And did the employer hire an expert who testified that he did not, that vocational rehabilitation would not? I believe they did not, Your Honor. Another issue is the commission overruled the arbitrator and found that the low back condition is related to the accident. We feel that is contrary to the manifest way of the evidence and should be reversed. On February 24, 2011, the petitioner injured his right leg. He was treated by Dr. Bassman through July 6 of 2011, at which time he was released PRF. The back complaints did not start until January of 2012, over 10 months after the accident. Why would that be unusual? Didn't Bassman allude to that? Didn't Bassman say that that happens because when you have the injury that he had, it alters your gait? Didn't Bassman say there was an indirect relationship between the accident and the limp and then caused the back problem because of the altered gait? Why is that not credible? It's not credible, Your Honor, because, well, first of all, you have the 10-month gap. Secondly, Bassman... Because he had the altered gait for 10 months. That's true. But Bassman said that, first of all, that he didn't say that... He said it contributed to it. First he said an altered gait could cause back pain. Then later on he says, I think it contributed to it. Well, first of all, he doesn't know what the back condition is. All he knows is the man is making back complaints. Secondly, there is no evidence that he knows how much walking he was doing, what his activities were other than riding down to the gas station. He didn't even know anything about the gas station. And as we'll get into, Dr. Bassman seemed to have gotten a bad history as to what some of his other activities were. So we think that Bassman's opinion is flawed based on the minimal information he had as to the petitioner's activities. We think his opinion, at worst, is sheer speculation. That could have caused it. At best, it's circular reasoning. I don't think he said it could have caused it. He said at least it contributed to it. That was his second opinion, yes, Your Honor. But I think that's, at best, circular reasoning. He says, well, a paltry gait can cause back pain. He doesn't know what the condition is. He doesn't know how much limping he was doing. But doesn't that go to the weight to be given to the opinion, and is that not within the province of the commission? Do we say that the opinion is insufficient as a matter of law? I think it's your job to determine whether or not the evidence is so sparse as to make it contrary to the manifest way to the evidence. Yes? And there is an opinion, nevertheless, of Bassman in the record. There is Dr. Bassman's opinion in the record, which we believe is based on, as I say, at best, circular reasoning. What is the contrary opinion in the record? The contrary opinion is Dr. Merkin. There is no evidence that his back condition is related to the work incident of February 24, 2011. We found there were no objective findings indicative of a significant back injury and that the subjective complaints and the degenerative changes were unrelated to the accident. Is there any opinion from Merkin as to whether this altered gait could cause back pain? Only by implication in saying, without qualification, there is no evidence that the back condition is related to the injury. But, no, he did not specifically say, and he didn't talk about the altered gait. And I considered the altered gait theory and rejected it. He never said that. He never specifically said it unless you apply that out of the fact, saying there's no cause of it. I guess what he said, he never directly contradicted Bassman on that issue, did he? He said he never addressed it. I think you're right, Robert. He did mention that he looked over Dr. Bassman's deposition. So he knew what Bassman was saying and gave this blanket statement. Can you ever give vocational rehabilitation before a petitioner reaches MMI? I presume you could do it if it was really clear what the final condition would be. But I think, as a general rule, it would be premature because you're starting something. But what if you start him down one road, and it turns out that either he is in better or worse shape than that road was predicated on? So I think at best it's premature, and they haven't proven that he was entitled to it at this point. Another error we believe is the medical treatment for the low back. I think that, to a large degree, will stand or fall on your ruling as to whether or not low back was proven to be related. If you accept us, you should deny it. If you affirm the arbitration commission on that issue, you should affirm them on the medical bills also. The other issue is the commission added six and four-sevenths weeks of temporary total for the period September 16th through October 31st, 2011. We think that's contrary to the manifest way of the evidence. The petitioner had an FCE on September 15th that demonstrated his ability to function in the heavy physical demand level. On September 26th, after reviewing the FCE, Dr. Bassman released him to return to full-duty work. All right, but that's where we're going to get into a little bit of a twist here. Yes, he did, but didn't he explicitly say, it was conditioned, we're going to try and see if it would work? So that is a little bit different than full duty without restrictions. I was looking at that when I was sitting back here. The claimant testified he was released to full duty, and I think Dr. Bassman said it two times. At one point he said, I didn't think it didn't work, but I think if you really look at it, I don't think the qualifications came in until he got the history later on. But I think the commission read too much into the record. Well, they interpreted it as a conditional. They did, and I think they read too much into it at that point. As I looked at it again, it looks to me like it was full-duty release until he got an additional history, which turned out to be an error. Dr. Bassman talked about, well, he got up on a roof, and he mentioned a six percent pitch, and he was uncomfortable or unsteady or something. Excuse me. And so then he put restrictions that he shouldn't be climbing on roofs. Well, didn't the employer tell him he better get down? I thought the employer was there. But he only got up on the ladder. Right. If he was unsteady, then the employer asked him to get down, didn't he? He did, Your Honor. But Bassman got the wrong history. He had him up on the roof with a six percent pitch and all, and it turned out that wasn't accurate either. Well, didn't Merkin also advise that he shouldn't be working at height or on uneven surfaces? I don't recall that, Your Honor. I'll have to look at that. When I come back, I'll confirm or deny that. Okay. And there was no change in his physical condition, apparently, between the full release and the restricted release, so we think that the commission's decision of giving the extra six weeks of temporary total was also contrary to the manifest way of the evidence. So, any questions? Thank you. Thank you. Thank you, counsel. Counsel, you may respond. Thank you. Good morning. May it please the Court. I'm John Lescara from Collinsville. This case has a Section 12 examiner like Dr. Brown's zero impairment in the last case. However, this case, the Section 12 examiner is probably about as good for the petitioner as I've ever seen. And to Dr. Merkin's credit, he characterized the injury as an obvious work injury with a displaced tibial plateau fracture, direct result of work injury, undergone ORIF, and has post-traumatic degenerative disease in his knee and has limited range of motion. He has significant and progressive degenerative changes as a result of the traumatic effect, and I agree at some point that he'll need a total knee arthroplasty. So he's saying that he'll need a knee replacement in the future. So there's really not that much issue with respect to the medical opinions in this case. Petitioner had a horrific injury. Dr. Bassman described it as a jigsaw puzzle, and all of that is important to the issues that are brought before the court today. So first of all, with respect to the causation of the back condition, it is my position that the testimony that the injury contributes is a cause or may be a cause is sufficient to prove causal connection. And that was Bassman's opinion? That was Bassman's opinion. Justice Hoffman alluded to it. Did Murka never take issue with that? He didn't. He didn't address it whatsoever. In fact, his statement in his report was that the accident was not a prevailing factor in the petitioner's back condition, which happens to be the Missouri standard. It has to be the predominant or prevailing factor. And isn't he from Missouri? He is. And in Illinois, of course, it's a cause or any cause. So that's basically how he treated it, so that the commission had on one hand the opinion of Dr. Bassman that it contributes and is a cause and no opinion on the other side, and to suggest that that conclusion of the commission was contrary to the manifest weight of the evidence doesn't really make any sense, quite frankly. With respect to the other issues in the case. Prevailing cause is what is attempting to be negotiated across the street here. Yes. Yes. Well, I hope that doesn't happen because it certainly makes a big difference in a lot of cases. So it's our position that then with respect to the voc rehab and return to work attempts, my client is uneducated, 32 years old, a roofer all of his life, a laborer by trade, did his best to try to find alternative employment, couldn't, consulted a free agency that helps people look for work. They were unable to find anything for him. Well, he's not uneducated. He has a high school diploma, unless you're saying that he's uneducated. I think that the commission concluded that his education didn't allow him to find his own work. That's better phraseology, isn't it? Yes, yes. Okay. But in any event, he did try his best to find work, couldn't, needed the assistance of vocational rehabilitation. Let me ask a question about his argument about MMI. In his interpretation, Dr. Bassman released the claimant to full duty with no restrictions. That's not exactly what Bassman did or said, is it? No, it isn't. And, in fact, there was a report done, a vocational assessment report, return to work report, and in the report it said that the petitioner would need frequent breaks, you know, because of the pain and the instability of his knee. Because he would try and see, wasn't it? That's exactly what the idea was, try to return to work, and probably the most significant thing from that is that he returned to Ray Kemper on a certain date after he was released, and instead of returning him to his regular job working with trusses, they put him in the office where he worked a few hours, and at the end of the day they fired him because he had a trace amount of marijuana in his system at the time of the original accident. So he never did get the chance to try to work in his regular job. Then he tried roofing, which was his other profession, and as was noted, the supervisor there was, he was unsteady climbing the ladder, and the supervisor says, please don't get on the roof. And so that left him basically with nothing. So if there are no questions, I thank you very much for your time. Thank you, counsel. Counsel, you may reply. Well, first of all, the question I promised to get an answer for about what Dr. Merkin said about the working at heights, you're absolutely correct. He said, I think he can work, but we recommend that he avoid working at high heights or on uneven ground. As far as the thing about what Dr. Bassman said, I think, again, if you look at the record, he said on at least two occasions, on direct and cross-examination, yes, I gave him a full-duty release. And the claimant, were you given a full-duty release? And the answer was yes. Well, when he says, well, we'll try and see, I released him, we'll try and see how it works out, that's, in your mind, an unequivocal full-duty release when he says, well, it's conditioned on how it works out? If you look at his testimony, I think there are two or three times that he doesn't say, we said we'd try it. He says, I gave him a full-duty release. He never said try and see? That's not in the record? I think later on he said it didn't work. If there's something there, I missed it, Your Honor. I've looked through, I've seen two or three times, twice with the claimant, Dr. Bassman once with the claimant. He may have said it every time, but at some point he did say it. I think at least at some point he said it didn't work. Whether he actually said the other thing, I honestly can't tell you, Your Honor. Would it make a difference? I think on the weight of the evidence, no. When you see someone say two times, yeah, I think it's clear he gave him a full-duty release. Now, whether he was thinking in the back of his mind, we'll see how this works or not, it doesn't alter the fact that it was a full-duty release. It may have some effect on what his conclusion was later on, but I don't think it alters the fact that, like I said, on two occasions, it's a full-duty release. Anything else? Okay, well, thank you very much. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement. The written disposition shall issue. We'll stand in brief recess.